Request of Governor and Council,
No. 4639.

OPINION OF THE JUSTICES.

Submitted December 30, 1957.

Answer returned January 16, 1958.

The following answer was returned:

*To His Excellency the Governor and the Honorable Council:*

The undersigned Justices of the Supreme Court make the following answers to the inquiries contained in your resolution filed December 16, 1957, pertaining to the levying of taxes upon gas and electric utilities at the state level.

The resolution states in part that you "are in need of judicial advice on the applicable constitutional law in this field in order properly to determine whether it is wise and practical . . . to convene the General Court in Special Session for the above-stated objective."

As is evident from this resolution, determination of the question before the Governor and Council for decision involves considerations which are practical as well as those which relate specifically to constitutional limitations upon the power to tax. The questions of the wisdom or practicality of legislation which might be recommended or adopted to replace the statute held unconstitutional in *Public Service Co.* v. *State,* 101 N. H. 154, are not matters of judicial concern. However to the extent that our opinions upon "important questions of law" (Const., Pt. II, *Art.* 74th) presented by your inquiries may be of aid in the performance of your constitutional duties (*Opinion of the Justices,* 79 N. H. 535), we deem it proper to answer, for reasons stated in the last paragraph of this opinion.

In expressing our opinions upon the constitutional issues, we are compelled to qualify our answers because of the generality of the inquiries and the absence of any proposed or existing statutory form such as customarily accompanies like inquiries from either branch of the Legislature or the Governor and Council. "It should be understood that we are not foreclosing any questions that may arise in the actual operation of [any proposed] act which may not

be apparent . . . under the questions submitted." *Opinion of the Justices,* 97 N. H. 533, 540.

Viewed broadly the questions posed by the resolution seek definition of fundamental constitutional limitations upon any proposal to substitute for RSA ch. 83, a new statute taxing the franchises of gas and electric utilities as property in ownership, according to some new method of valuation; or in the alternative imposing a special tax measured by income derived from the exercise of such franchises, and having characteristics differing from those of a general property tax.

1. The answer to your first inquiry depends upon the interpretation to be placed upon it. If by *"ad valorem* property tax" is meant a "general property tax" based upon the ownership of franchises as property, and a tax of the sort which has consistently been regarded as a tax upon "estates" (Const., Pt. II, *Art.* 6th), our answer to the question is that a tax upon the franchises of gas and electric utilities need not take the form of an *ad valorem* property tax for reasons which are more fully stated in the answers hereinafter made to questions 6 through 8. Accordingly our answer to question 1 is "no."

2 & 3. Your second and third questions suggest that the first question is intended to describe a general property tax levied because of ownership or possession of a franchise. This was the type of tax considered in *Opinion of the Justices,* 82 N. H. 561, and *Opinion of the Justices,* 84 N. H. 559. It has the characteristics of a tax upon estates, even though upon intangible property rather than property tangible in nature. So construed, your second and third questions present the issues of whether such a state tax must be levied at the average rate of taxation in cities and towns throughout the state *(cf.* RSA 82:2) and whether franchises must be assessed in the same proportion to full value as property is assessed in such cities and towns. Our answer to questions 2 and 3 is "no." *Boston, Concord &c. Railroad* v. *State,* 60 N. H. 87; *Wyatt* v. *Board of Equalization,* 74 N. H. 552.

Article 5th, Part Second, of our Constitution requires that taxes shall be proportional and reasonable. This requires a uniform valuation and a uniform rate throughout the district by which the tax is levied. *Boston, Concord &c. Railroad* v. *State, supra,* 95. In other words a state tax must be uniform throughout the state, a county tax throughout the county, a town tax throughout the town. *Id.* Consequently if the State as a taxing district levies an

*ad valorem* property tax on the franchises of gas and electric utilities the Constitution does not require that this tax be levied at the average rate of taxation upon property in the cities and towns throughout the state, or that the franchises be valued in the same proportion to full value as the valuation of property in the cities and towns throughout the state bears to its full and true value. See *Amoskeag Mfg. Co.* v. *Manchester,* 70 N. H. 336.

It should be noted however that the tax currently imposed upon railroads by RSA ch. 82, *supra,* is in the nature of a general property tax at the state level, and by legislative provision is presently levied at "the average rate of taxation . . . upon other property throughout the state." *S. 2.* Since the tax suggested by your questions 2 and 3 would be a tax of the same class within the same taxing district, if the Legislature should decide to levy both taxes simultaneously, it would be necessary that the two taxes conform both in rate and mode of valuation. *Bemis &c. Bag Co.* v. *Claremont,* 98 N. H. 446, 451.

4 & 5. Questions 4 and 5 present the issue of whether the Legislature may provide by statute that the value of a utility franchise for purposes of a general property tax shall be determined according to formulae outlined by the questions. Whether the value of a utility franchise as property may reasonably be determined according to formulae some terms of which are undefined, depends upon information not presently before us, involving factual considerations, and the operation of economic principles upon them. Under these circumstances, we ask to be excused from answering questions 4 and 5.

6 & 7. Questions 6 and 7 in some respects may conveniently be considered together, since each proposes a tax to be measured by "net operating income" at a rate differing from that of the tax currently imposed upon dividends and interest by RSA ch. 77. Question 6 appears to relate to a general property tax or tax upon estates,. while question 7 clearly relates to a different type of tax.

If we correctly interpret question 6 as referring to a general property tax to be levied upon franchises as property in ownership, then such a tax would need to bear no relation to the tax imposed by RSA ch. 77, which is an income tax by virtue of the amendment adopted in 1955. RSA 77:1 as amended by Laws 1955, *c.* 309, *s.* 1. See *Opinion of the Justices,* 99 N. H. 512. The tax suggested by question 6 would however be subject to the constitutional limitations which apply to general property taxes.

We express no opinion as to the effect of the assumption suggested by question 6 that the value of a franchise as the subject of a general property tax is proportional to net income or net operating income, since the economic facts upon which the validity of such an assumption would rest are not before us. The making of such an assumption presents a legislative question in the first instance and raises no issue of constitutional law which can now be determined. It may be noted however that, as illustrated by the case of *Public Service Co.* v. *State*, 101 N. H. 154, an assumption contrary to fact which is embodied in statutory formula may render such a statute unconstitutional.

Question 7, as before stated, relates to a tax which would be distinct from the general property tax or tax upon estates, although denominated a "fee . . . for the extraordinary privilege" of exercising the franchise of a utility. Since the purpose indicated by your resolution is to procure new revenues, we may fairly assume that a revenue measure is intended, rather than a mere license fee having as its foundation the cost of regulating the utilities involved. *Cf.* RSA ch. 363-A. See *State* v. *Angelo*, 71 N. H. 224; *Marine Corps League* v. *Benoit*, 96 N. H. 423, 426.

The power to tax franchises as property in ownership or possession, in the form of the tax upon estates is well established. *Opinion of the Justices*, 82 N. H. 561, 565; *Opinion of the Justices*, 84 N. H. 559; *Public Service Co.* v. *State*, 101 N. H. 154. See *Bartlett* v. *Carter*, 59 N. H. 105, 106. *Fitchburg Railroad* v. *Prescott*, 47 N. H. 62, 67; *Atlantic &c. Railroad* v. *State*, 60 N. H. 133, 139. Franchises as a subject of taxation were first expressly mentioned in the Constitution by the amendment of Article 6, Part II, adopted by the people in 1903. Previously the Constitution provided for the taxation of "polls and estates in the manner that has heretofore been practiced." By the amendment of 1903, Article 6 was brought into its present form to provide for the taxation of "other classes of property, including franchises and property when passing by will or inheritance." The intention of the people to thereby permit the taxation of property classified otherwise than as polls and estates has since been firmly established. *Thompson* v. *Kidder*, 74 N. H. 89; *Opinion of the Justices*, 77 N. H. 611, 616; *Williams* v. *State*, 81 N. H. 341; *Conner* v. *State*, 82 N. H. 126; *Brock* v. *Farmington*, 98 N. H. 275, 280.

The provision authorizing the taxation of "franchises" as property otherwise classified was intended to permit taxation for reasons

other than ownership, or possession of a franchise. It is established law that such a tax, the "generative source" of which is something other than ownership (*Opinion of the Justices*, 82 N. H. 561, 568) need not be correlated either in mode of assessment or by uniformity of rate, with the general property tax or with other taxes which depend for their incidence upon some characteristic event distinct from ownership.

Hence it is our opinion that franchises of utilities may properly be taxed at a special rate, distinct from that imposed upon incomes, or inheritances, or by the general property tax. We see no reason why such a special tax upon utility franchises may not validly be imposed by reason of the receipt of income from the exercise of such franchises, or why it may not be levied at a special rate, and in proportion to the amount of income received through exercise of the franchises.

In our judgment such a tax would not be open to the objection that it would be a privilege or occupation tax such as has previously been condemned when proposed for imposition upon other subjects. See *Opinions of the Justices*, 95 N. H. 537, 539; 95 N. H. 543; 95 N. H. 555; 98 N. H. 527. The exercise of a utility franchise is not a "common right" (*Cf. Opinion of the Justices*, 82 N. H. 561, 563; 84 N. H. 559, 568) but rather a special right which the State may and does grant or withhold at pleasure, to perform acts which are monopolistic and therefore subject to public regulation in the public interest. See *State* v. *Railroad*, 69 N. H. 35; 70 N. H. 421; *State* v. *Company*, 86 N. H. 16, 27, 28. While the right is undoubtedly property (*Opinion of the Justices*, 82 N. H. 561, 564), it does not follow that it must be taxed by means of a general property tax any more than income or property transferred by inheritance or by sale must be so taxed. Hence it may be taxed when its exercise produces income, and the amount of the tax may be measured by the amount of income so received. *Cf. Williams* v. *State*, *supra*, 356. The tax proposed by question 7 would be free from any requirement that it conform to the general property tax, or to other special taxes of a different class such as that imposed by RSA ch. 77, but uniformity and proportionality must be maintained within this separate class of franchise taxes.

We do not consider this conclusion to be inconsistent with what was said in *Opinion of the Justices*, 95 N. H. 543. The bill there under consideration proposed as a measure of the franchise tax then imposed by what is now RSA ch. 83, a specified rate for each

kilowatt hour of electricity produced by an electric utility within the state. Since the tax imposed by the statute proposed to be so amended was a general property tax, the conclusion was inevitable that the amendment would result in disproportion and thus violate the constitutional requirements pertaining to that type of tax.

A further consideration which occurs to us in connection with this question is whether the franchises of gas and electric utilities may properly be selected as the subject of a special tax. It is our opinion that they may, for reasons sufficiently stated in *Opinion of the Justices*, 84 N. H. 559, 569, and other opinions of the justices delineating the scope of the power of the Legislature to select the subjects of taxation. See *Opinion of the Justices*, 97 N. H. 533, 536. Our answer to question 7 is "yes."

8. Your eighth question, as we interpret it, seeks to determine whether an income tax may be laid upon the net or gross income of gas and electric utilities, at a rate which differs from that of the tax currently imposed upon dividends and interest. In our opinion the answer to the question is "yes." Just as franchises of gas and electric utilities may reasonably be selected as subjects for taxation under the general property tax to the exclusion of other franchises (*Opinion of the Justices*, 84 N. H. 559, 569) so income from the exercise of such franchises may be separately classified. The class so selected is as distinctive as that of the class upon which the tax upon interest and dividends is imposed. *Conner* v. *State*, 82 N. H. 126.

The question of whether income from the exercise of utility franchises may be taxed at a rate differing from that of the tax upon interest and dividends, or whether all such income must be taxed at a uniform rate presents a more difficult question. We take the view however that such classification may be supported by rational consideration distinguishing one class of income from the other. Thus should the tax contemplated by question 8 be levied upon net income, it would be distinguished from the tax imposed by RSA ch. 77, the essential characteristics of which are those of a gross income tax. Each such tax would constitute a separate class of income tax. See *Opinion of the Justices*, 95 N. H. 537, 539.

In concluding summary, subject to the qualifications stated herein, questions 1, 2 and 3 are answered "no"; and questions 7 and 8 are answered "yes." Questions 4 and 5 are not answered for the reasons indicated, and question 6 is answered in part.

While our duty to return the foregoing answer in response to your inquiries is not free from doubt, we have been prompted to

return it by the probability that it will be of assistance to you in determining whether to call the Legislature together in advance of the next regular session, as provided by *Art.* 50th, Pt. II of the Constitution. Although the inquiries made relate to proposals which are primarily legislative in character and the Legislature is not presently in session, the answers are pertinent to the question now before you of whether to reconvene the Legislature to consider the imposition of a new tax upon the franchises or income of gas and electric utilities. The problem occasioned by financial difficulties arising out of invalidation of the tax heretofore levied (*Public Service Company* v. *State, supra*), may be thought to present a "solemn occasion" warranting reply to the inquiries made so far as they are "upon important questions of law." Const., Pt. II, *Art.* 74th. See *Opinions of the Justices,* 73 N. H. 625; 75 N. H. 613; 86 N. H. 604; 93 N. H. 474, 475; 96 N. H. 517. Under the circumstances we have set aside our doubts, and submit the foregoing answers without intending however to depart from the settled interpretation of *Art.* 74th, *supra,* or to set a precedent for future advisory opinions. See *Opinion of the Justices,* 330 Mass. 713, 727.

> FRANK R. KENISON,
> LAURENCE I. DUNCAN,
> AMOS N. BLANDIN, JR.,
> EDWARD J. LAMPRON,
> STEPHEN M. WHEELER.

January 16, 1958.

*Louis C. Wyman,* Attorney General and *Warren E. Waters,* Deputy Attorney General, for the State.

*Sulloway, Hollis, Godfrey & Soden* for the Public Service Company of New Hampshire and New Hampshire Electric Company.

*Orr & Reno* for the Manchester Gas Company and Concord Natural Gas Company.

*Richard F. Upton* and *Robert W. Upton,* pro se.

*Rae S. Laraba,* pro se.

*Eralsey C. Ferguson,* President of the Senate, and *W. Douglas Scamman,* Speaker of the House of Representatives.