Request of House of Representatives,
No. 6238.

OPINION OF THE JUSTICES.

April 21, 1971.

The following resolution was adopted by the House of Representatives March 31, 1971 and filed in this court on April 2, 1971:

"WHEREAS, there is presently pending before the House of Representatives House Bill 383, an act imposing a personal income tax, repealing the tax on interest and dividend income, repealing the commuters income tax, repealing the poll tax and related statutes, providing additional return of revenue to the cities and towns and providing for property tax relief and stabilization, and

"WHEREAS, Section 1 of the Bill would impose a 3% tax upon personal incomes, and

"WHEREAS RSA 77-A imposes a 6% tax on the taxable business profits of business organizations; and

"WHEREAS Section 9 of the Bill would establish a system of property tax relief and stabilization for low income taxpayers and a proposed amendment to the Bill would impose limits on the amount of property tax which would qualify and upon the amount of any claim for property tax relief and stabilization; and

"Whereas, the foregoing may raise constitutional questions, now therefore be it

"Resolved, That the Speaker of the House is directed to obtain from the Justices of the Supreme Court, their opinion on the following questions of law which are of serious importance to the financial welfare of the state, namely:

"1. Would any constitutional provision be violated by imposing a tax of 3% on personal incomes as proposed by section one of House Bill 383 while at the same time imposing a tax of 6% on taxable business profits of business organizations under RSA 77-A?

"2. Would any constitutional provision be violated by section nine or by including in section nine of House Bill 383 the limitations proposed by the said amendment?

"Be it Further Resolved, that the Speaker transmit seven copies of this resolution, of House Bill 383, and of the proposed amendment to House Bill 383 to the Clerk of the Supreme Court for consideration by the Court."

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court reply as follows to the inquiries with respect to House Bill No. 383 contained in your resolution adopted March 31, 1971 and filed with this court on April 2, 1971.

House Bill 383 would enact "a personal income tax," as a new chapter 77-C, at the same time repealing the interest and dividends tax ( RSA ch. 77 ), the commuters' income tax ( RSA ch. 77-B ( supp. ) ), and the poll tax ( RSA 72:1 ( supp. ), and related provisions ).

It would also enact as RSA ch. 72-A a statute entitled "Property Tax Relief and Stabilization," which would provide a measure of tax relief to persons subject to the general property tax, by means of a limited credit against a personal income tax due under the proposed statute, or by outright grant to the taxpayer, or both.

Your resolution takes note of the fact that RSA ch. 77-A ( supp. ) imposes "a 6% tax on the taxable business profits of business organizations," and the first question contained in the

resolution is as follows: "Would any constitutional provision be violated by imposing a tax of 3% on personal incomes as proposed by section one of House Bill 383 while at the same time imposing a tax of 6% on taxable business profits of business organizations under RSA 77-A?"

The essential features of the business profits tax were considered in *Opinion of the Justices,* 110 N.H. 117, 262 A.2d 290, returned to the Governor and Council on January 30, 1970. As then proposed, the tax was considered to be in the nature of a tax on net income, and not required to be at a rate uniform with that of the interest and dividends tax ( RSA 77:1 ( supp. ) ), " a tax upon . . . gross income. " *Id.* at 122, 262 A.2d at 295. While the proposed business profits tax was not then in the form of a legislative bill, as enacted at the 1970 special session of the legislature it contained the essential provisions considered in the opinion previously returned. RSA ch. 77-A ( supp. ).

As indicated, a tax of 6% is thereby levied upon the "taxable business profits of every business organization " ( *s.* 2 ), which by definition means the " gross business profits " ( *s.* 1 ( IV ) ) of corporations, partnerships, individual proprietorships, trusts and estates ( *s.* 1 ( III ) ), with deductions before tax, limited in the case of sole proprietorships primarily to " a fair and reasonable compensation for the personal services of the proprietor. " RSA 77-A:4 ( supp. ), ( business profits tax ).

The tax proposed by House Bill 383 in the new chapter 77-C would be upon the income of individuals and fiduciaries at a rate of 3% of " New Hampshire taxable income. " Section 1, 77-C:2. This is defined to mean, as to resident individuals, " New Hampshire modified gross income" ( *s.* 1, 77-C:1 ( IV ) ) which is " the amount of the taxpayer's adjusted gross income for federal income tax purposes " ( *s.* 1, 77-C:1 ( IV ) ), with certain adjustments ( *id.* ) and with taxable business profits deducted. *S.* 1, 77-C:1 ( V ) ( a ) ( 2 ). Resident fiduciaries would similarly be taxed upon total income shown by federal return, less "profit from trade or business, if any. " *S.* 1, 77-C:1 ( V ) ( c ) ( 2 ) ( B ). Nonresident individuals and nonresident fiduciaries would be taxed upon " New Hampshire derived income" ( *s.* 1, 77-C:1 ( V ) ( b ), ( d ) ), defined to mean rents, royalties and income from personal services from activities within the state, exclusive of income subject to the business profits tax. *S.* 1, 77-C:1 ( III ). Thus the personal income to be taxed would not include income taxable

under RSA ch. 77-A ( supp. ) as business profits, but would include income from wages, salaries, and unearned income.

In *Opinion of the Justices*, 110 N.H. 117, 122, 262 A.2d 290, 295, we stated that "net income may properly be defined by reference to presently effective federal law." We consider that gross income may also be defined by reference to existing federal law, and that "adjusted gross income" thus defined, and "total income" as employed by House Bill 383 in imposing a tax upon resident individuals and fiduciaries would violate no constitutional provision.

The tax which House Bill 383 would impose would be a gross income tax ( *see* 33 Am. Jur. 2d, 1971 Federal Taxation, Para. 1056 ) which would differ in its essential characteristics from the net income tax imposed by the business profits tax law. This being so, we are of the opinion that the tax proposed by the bill may be at a rate differing from that of the business profits tax, without violation of the Constitution. *Opinion of the Justices*, 110 N.H. 117, 122, 262 A.2d 290, 295 *supra. See also Opinion of the Justices*, 101 N.H. 549, 558, 137 A.2d 726, 732 ( 1958 ). We adhere to the view previously expressed, that the characteristics of gross income are sufficiently distinct from those of net income as to admit of separate classification, provided that all income within each class is taxed at a uniform rate.

By reason of the features of House Bill 383 previously noted, no double taxation of income would result. *Cf. Opinion of the Justices*, 106 N.H. 202, 207, 208 A.2d 458, 462 ( 1965 ). Your first question is answered "No."

Your second question relates to the property tax relief provisions of House Bill 383, and is as follows: "Would any constitutional provision be violated by section nine or by including in section nine of House Bill 383 the limitations proposed by the said amendment?"

A credit against the personal income tax which would be provided for by section 1, 77-C:4 ( IV ) of the bill is: "Allowable claims for property tax relief and stabilization under the provisions of RSA 72-A," which is section nine of the bill. The nature of such claims is stated in section nine as follows: "72-A:3 Computation of Claim. For any taxable year, a claimant shall be entitled to make claim for the amount by which the property taxes accured or rent constituting property taxes accrued upon the claimant's homestead for the taxable year exceeds six percent of the claimant's total household income for that taxable year."

The proposed amendment to section nine of the bill referred to by your question would add to the above provisions, the following: "Provided, that for the purpose of computing claims, property taxes accrued or rent constituting property taxes accrued shall in no event exceed nine hundred dollars and provided further, that in no event shall any claim be allowed in excess of three hundred dollars."

The net effect of the provisions of section 9, 72-A:3 would be to credit a taxpayer with the amount by which his property tax exceeds 6% of "all income received by all persons of [his] household in a calendar year while members of the household" (72-A:1 (III)), by excusing him from payment of any personal income tax to that extent; and in the event his excess property tax should exceed his personal income tax liability, or if he has no such liability, by entitling him to receive payment from the state in the amount of such excess. 72-A:4. The amendment to section 3 would place an upper limit of nine hundred dollars upon the amount of property taxes to be used in computing a claim under the new chapter, and an upper limit of three hundred dollars upon any allowable claim.

We take the view that limitations such as those proposed by the amendment are an essential prerequisite to constitutionality. See Opinion of the Justices, 84 N.H. 559, 571-72, 149 A. 321, 327-28 (1930); Opinion of the Justices, 88 N.H. 500, 507, 190 A. 801, 806 (1937). Under the amendment the credit provided to any taxpayer would be limited by reason of the nine hundred dollar limitation (representing a valuation of $22,500 at the average tax rate) to an exemption, not to exceed three hundred dollars, of the difference between six percent of his household income and the amount of his property tax bill under $900. Thus, the relief afforded by the proposed chapter 72-A would benefit primarily the low or moderate income family, a disproportional amount of whose income would otherwise be consumed by property taxes. See Howard, "State and Local Fiscal Relationships," New Hampshire Town and City, Jan. 1971, at 4.

The new chapter created by section nine (ch. 72-A) is not a revenue measure but is a tax relief measure. The fact that the claim provided by 72-A:3 may be used as a credit against personal income tax liability does not affect the validity of the income tax. The purposes of section nine could be equally as well achieved were the state to administer the personal income tax independently, and then return to the taxpayer the amount des-

ignated as a credit against the income tax, plus any other benefit provided by section nine to which he might be entitled.

The validity of section nine of the bill depends upon the essential characteristics of the section. *Opinion of the Justices*, 99 N.H. 528, 530, 114 A.2d 514, 516 ( 1955 ). Its purpose, to lessen the burden cast upon families of small or moderate means by the general property tax, is a recognized public purpose both in this state, and elsewhere. The effect of the tax relief provisions would be to furnish a limited property tax exemption, but at the expense of the state, and not of the municipality which levies the tax.

The provisions of the Constitution, part I, article 12, and part II, article 6 " have always been understood to deny power to the legislature to authorize the assignment of public funds to other than public purposes. " *Opinion of the Justices*, 85 N.H. 562, 563, 154 A. 217, 221 ( 1931 ). Public assistance, afforded in a limited way and without discrimination, to persons eligible therefor by reason of a lack of means of their own, is a recognized exercise of the protective power. *Id.*; *see Opinion of the Justices*, 82 N.H. 561, 571, 138 A. 284, 290 ( 1927 ).

The relief which section nine would afford would extend to homesteads rented as well as owned. The limitations to be imposed by the amendment confine the relief provided within reasonable bounds, and subsidize only taxes upon properties of moderate valuation which are taxed to persons of limited means.

The exemption provided by section nine would not violate equality of right if the classification adopted is reasonable. *Opinion of the Justices*, 82 N.H. 561, 570-73, 138 A. 284, 287-88 ( 1927 ); *Opinion of the Justices*, 110 N.H. 206, 266 A.2d 111 ( 1970 ). We think it may be considered in the public interest and reasonable to exempt up to three hundred dollars of the amount by which a property tax exceeds six percent of an owner's income on a home which is subject to a high tax.

Exemptions from taxation may be thought to produce inequality; but it is established law that under our Constitution while inequality of taxes laid is forbidden, ' inequality caused by taxing some property and not taxing other is permitted '. *Opinion of the Justices*, 95 N.H. 548, 550, 551, 65 A.2d 700, 701 ( 1949 ); *Opinion of the Justices*, 82 N.H. 561, 574, 138 A. 284, 291 ( 1927 ). And *see Opinion of the Justices*, 94 N.H. 515, 53 A.2d 194 ( 1947 ).

Other jurisdictions including Vermont ( Vt. Laws 1969, ch. 139 ), Kansas ( Kan. Stat. Ann. *ss.* 79-4501 to 4518 ( Supp. 1970 ),

Minnesota ( Minn. Stat. *ss.* 290.0601 - .0617 ( 1969 ) ) and Wisconsin ( Wis. Stat. *s.* 71.09 ( 7 ) ( 1967 ) ) have enacted comparable measures having analogous safeguards. *See* Calif. Rev. and Tax. Code *ss.* 19501 - 40 ( Deering Supp. 1971 ). The limitations of the amendment serve to prevent the extension of greater tax relief to the " elderly lady living in a great mansion " than to one who lives in a modest home. Shannon, " Circuit Breakers as a Means of Putting a Ceiling on Property Taxes, " p. 1, Advisory Commission, Intergovernmental Relations, Washington, D.C. ( 1970 ). It is not thought that section nine would have the effect of establishing progressive rates for either the personal income tax or the property tax. Rather it would provide a limited exemption from the property tax upon homesteads, in amounts uniformly proportional within the class entitled to relief, at a flat percentage rate of the aggregate incomes of the household inhabitants. A three hundred dollar exemption granted as to amounts by which property taxes exceed six percent of family income is not unreasonable upon its face, in the light of country - wide statistics showing four percent of income to be the country - wide average for property taxes. Jaffe, " Reducing the Property Tax Burden On the Poor, " *Pennsylvanian,* Jan. 1971, at 22.

As is always the case with legislative enactments, the wisdom of the measure proposed is for the legislature, and not within the prerogative of the justices to determine. *Opinion of the Justices,* 101 N.H. 549, 553, 137 A.2d 726, 729 ( 1958 ); *see Niemiec* v. *King,* 109 N.H. 586, 587, 258 A.2d 356, 358 ( 1969 ).

We conclude that section nine of the bill as proposed to be amended would not violate the Constitution. The answer to your second question is also " No. "

FRANK R. KENISON.
LAURENCE I. DUNCAN.
EDWARD J. LAMPRON.
WILLIAM A. GRIMES.
ROBERT F. GRIFFITH.

April 21, 1971.

Representative *Richard S. Levy* of Portsmouth for affirmative answers.

*Martin L. Gross,* on behalf of Governor Walter Peterson, for negative answers.