RALPH A. BROCK *v.* FARMINGTON.

ERROL S. HALL & a. *v.* SAME.

*Errol S. Hall* and *Cooper, Hall & Cooper* (*Mr. Errol S. Hall* orally), for the plaintiffs.

*Eugene F. Nute* for the defendant, furnished no brief.

*Warren E. Waters*, Assistant Attorney General (by brief and orally), for the State Tax Commission, as *amicus curiae*.

GOODNOW, J. One of the principal issues raised by these cases involves the standard by which the stumpage value at the time of cutting, on which a yield tax is assessed, is to be determined. On this question, the statute (Laws 1949, c. 295, s. 1) provides as follows: " 'Stumpage value' means the amount determined by the assessing officials in the same manner as other property values for the purpose of taxation. The assessing officials shall give full consideration to the amounts received from stumpage sales in the vicinity, prices offered for logs, pulpwood and fuel wood, current operating costs and similar data, taking into consideration the difficulties of operating in each case."

It is the position of the defendant that the language of this statute permits the fixing of stumpage value by the use of a formula. In general, it would fix that value as the difference between the value of the logs on the brow at roadside and the owner's actual cost of cutting the timber trees, reducing them to logs and hauling the logs to the brow. In the particular cases at bar, the plaintiffs did not haul the logs to a roadside brow but processed the timber "from stump to stick." That is, the trees were

cut, reduced to logs and then hauled to a portable sawmill operated by the plaintiffs rather than to a roadside brow. The logs were there sawed into both round and square edge lumber. This manufactured lumber was then removed from the mill to a storage field where it was stacked in piles with sticks between each layer of lumber to permit the entry of air and the seasoning and drying of the lumber. Under these circumstances, the defendant would modify the general formula by fixing the value as the difference between the value of the manufactured lumber on sticks and the owner's actual cost of operating the lumber from stump to stick. It is contended that a determination of value by either formula meets the requirements of the statute since, in the language of its second sentence, they each give consideration to "prices offered for logs," either directly or as part of the value of manufactured lumber on sticks, and to both "current operating costs" and "the difficulties of operating" by reflection of those factors in the owner's actual operating costs. With this position, we are not in agreement.

Value for tax purposes is normally a question of fact. Unless the statute requires the use of specific matters as exclusive measures for its determination, consideration is to be given to all relevant factors. No such limitation exists in the statute before us. The first sentence not only defines the meaning of stumpage value, but, in effect, prescribes that its amount shall be determined "in the same manner as other property values for the purposes of taxation." Since 1872, our statute (now R. L., c. 76, s. 1) has required that "all taxable property" be appraised "at its full and true value in money as [the selectmen] would appraise the same in payment of a just debt due from a solvent debtor." This statute has been consistently construed to give to value the meaning of sale value or market value (*Trustees &c. Academy* v. *Exeter*, 92 N. H. 473, 481) in the determination of which all relevant factors are to be considered (*supra*, 486). On the other hand, while the language of the second sentence of the statute now before us states certain matters bearing on value, it neither requires nor authorizes the assessing officials to fix values upon these factors alone or within the limits of any specific formula. Its language directs the attention of assessing officials to certain considerations but not to the exclusion of others. We conclude that its provisions are not sufficiently explicit to limit the broad and general basis for determination of stumpage values established by the first sentence.

The tax is to be assessed upon "stumpage value at the time of

cutting." S. 3. While price received, or "value," at the brow, less actual operating costs may have some tendency to indicate market value on the stump, provided suitable allowance is made for operating overhead and profit, it can hardly be relied upon as an exclusive test. A determination thus made will obviously be affected by such variable factors as the efficiency of the particular operator and the lapse of time between cutting and sale at the brow, or in a case like this one, sale of the finished lumber.

In short, whether the method suggested should be used in a particular case must depend upon whether it can be found to furnish a reliable index of market value in the case. It may not be adopted as a rule of invariable application. The statute requires consideration of "current operating costs," not merely costs of the particular operation, and other factors enumerated by the statute may not be ignored. Any particular method must be subject to adjustment to meet the circumstances of the particular case, to the end that market value of the stumpage at the time of cutting may be ascertained. Thus the use of "amounts received from stumpage sales in the vicinity" may be affected by erroneous estimates of quantity, so as to require adjustment in the determination of the value of stumpage actually cut. The essential matter to be determined is market value at the time of cutting. The statute plainly provides for full consideration of all pertinent evidence in making the appraisal.

The other question presented is whether the propriety of a yield tax is to be determined by a comparison of the appraised value of the stumpage in controversy, on which the tax is assessed, with its fair market value or whether the comparison is to be made with the proportion of that value at·which other stumpage or other property in general in the community is appraised. Both parties agree, and it appears clear to us, that the requirement of proof in actions seeking an abatement of a general property tax, namely that the disputed appraised valuation, in relation to its fair market value, must be shown to be disproportionate to that of other property in general (*Rollins* v. *Dover*, 93 N. H. 448, 450; *Clark* v. *Middleton*, 74 N. H. 188), is not applicable to cases involving the yield tax. The defendant, however, would simply modify this requirement by using the proportional valuation of other stumpage in the taxing district, instead of other property in general, as the standard in yield tax cases. This position overlooks the fact that in yield tax cases, unlike cases involving the general property tax,

a uniform ratio between assessed value and market value does not achieve that uniformity and equality essential to legal taxation under the Constitution and laws of this state. See *Williams* v. *State*, 81 N. H. 341, 347.

Our statute requires the appraisal of all taxable property "at its full and true value." R. L., c. 76, s. 1. The appraisal of property at a higher figure is illegal and would, in the absence of special circumstances, be a sufficient ground for an abatement. It is a peculiar feature of the general property tax that an abatement of it depends upon a comparison of the disputed valuation with a standard other than that established by the statute. The assessment of that tax looks to the raising of a certain sum of money. The rate at which this amount is to be raised is not one fixed by statute but is determined by the relation of the total appraised valuation of all taxable property to the total tax to be raised. Since total valuation bears directly on the rate, if each property is appraised at the same proportion to its full and true value, whether it be higher or lower than that value, the resulting taxes must be proportional. It is not when the appraised value of one property is greater than its true value but only when it is disproportionally higher in relation to that value than is the case as to other property in general, that its owner bears more than his share of the tax burden and is entitled to an abatement. The interdependence of the appraised values of all taxable properties in the community requires the special rule applicable in actions seeking an abatement of a general property tax. No such relation exists between the appraised values of all stumpage in the community subject to taxation as to require the adoption of a like standard for comparison in yield tax cases.

Nor would the adoption of the comparison urged by the defendant be effective to secure legality and equality of taxation upon owners of stumpage subject to the tax. It has been said, in connection with an action involving the general property tax, that in one sense the plaintiff is "one party and all the remaining taxpayers the other party." *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 200, 206. In yield tax cases the State is in a sense a party to the proceeding. It is obligated to reimburse each city and town for the difference between the amount which would have been received from the taxing of all growing wood and timber under the general property tax and the amount actually received under the yield tax. Laws 1949, c. 295, s. 18. In the assessment of

general property taxes, if all property is appraised in the same degree proportionally higher than its true value, the illegality of such an appraisal is cured in the resulting tax by the proportionally lower rate, determined on the basis of the ratio between the total appraised value of all taxable property and the sum required to be raised. By contrast, if the appraised values of all stumpage in a community are similarly set proportionally higher than the true value of that stumpage, the resulting tax is not affected by an automatically reduced rate and is illegal. The State's obligation to reimburse that particular municipality is reduced by such an excessive appraisal and the equality of burden between the State (or the taxpayers of other municipalities) and the yield tax payer is not properly maintained.

The yield tax applies to a distinctive class of property and is imposed only upon a certain event and at a fixed rate. It is not correlated with other taxes. *Opinion of the Justices*, 84 N. H. 559, 575. Its assessment contains no features which require the determination of the propriety of an abatement other than by comparison of the appraised value of the stumpage in controversy with its full and true value.

The opinions herein expressed provide the answers to the specific questions transferred and the order is

*Case discharged.*

All concurred.